FILED
2017 Sep-19  PM 06:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **BENJAMIN N. SCHWARTZ, ET AL.,** | ) | |
| | ) | |
| **PLAINTIFFS,** | ) | |
| | ) | |
| **V.** | ) | **CASE NO:  5:16-cv-00332-MHH** |
| | ) | |
| **CHECKREDI OF ALABAMA, LLC, ET AL.,** | ) | **CLASS ACTION** |
| | ) | |
| | ) | |
| **DEFENDANTS.** | ) | *UNOPPOSED* |
| | ) | |

## PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff Benjamin N. Schwartz ("Plaintiff") alleges that Defendants CheckRedi of Alabama, LLC, et al. (collectively, "CheckRedi") collected a bad check fee in excess of the amount allowable by law in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA").  Plaintiff also alleged that CheckRedi initiated an electronic debit from Plaintiff's and class member's bank accounts without prior authorization in violation of the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq*. ("EFTA"). Plaintiff alleged that CheckRedi's violations of the FDCPA and EFTA rendered it liable for statutory damages, costs and reasonable attorneys' fees.

After engaging in extensive motion practice and discovery, Plaintiff and CheckRedi (the "Parties") turned their collective attention to the determination of

whether a settlement could be reached.  After an in-person mediation, followed by extensive negotiations and the exchange of confidential information, the Parties were able to reach the proposed class settlement. The settlement provides that CheckRedi will pay $44,814.00 to a common fund for class settlement.  The amount to be paid to each Class Member will be determined by dividing the common fund by the number of bad checks written by the Class.  For example, if 2,340 bad checks were written by the Class, then the amount paid to each Settlement Class Member would be $19.15.  Additionally, CheckRedi agreed to pay the expenses associated with notice and administration of the settlement, and not to objects to attorney's fees, costs and expenses up to $110,000.00.  Checkredi also agreed to pay Plaintiff $6,000.00 as an incentive award for being the class representative.

Under the Eleventh Circuit's mandated consideration of the factors governing fairness, adequacy, and reasonableness, the proposed class action Settlement warrants final approval.  As of the time of this filing, no objections or opt-outs have been made and any objections will be addressed on or before October 24, 2017. Accordingly, Plaintiff requests that the Court finally approve the Settlement Agreement and enter the parties' Final Order (attached hereto as Exhibit A) granting final approval.

## I.     <u>INTRODUCTION AND PROCEDURAL BACKGROUND</u>

Plaintiff Benjamin N. Schwartz, filed his Complaint in this action on February 25, 2016.  (Doc. 1).  The Complaint alleges CheckRedi collected a bad check fee in excess of the amount allowable by law in violation of the FDCPA.  The Complaint also alleges CheckRedi initiated an electronic debit from Plaintiff's consumer bank account without prior authorization in violation of the EFTA. Additionally, the Complaint claims that CheckRedi's alleged violation of the FDCPA and EFTA renders it liable for statutory damages, costs and reasonable attorneys' fees.

The lawsuit consists of three pled classes, all comprised of exactly the same individuals who claim CheckRedi withdrew collection fees electronically from their bank accounts after each putative class member bounced a check.  Two claims under the FDCPA were defined as FDCPA Class A and Class B.  The putative claims of Class A are to be dismissed.  This Settlement Agreement pertains to putative FDCPA Class B and the putative EFTA Class.  FDCPA Class B consists of all natural persons, who within one year prior to filing of this action and extending through the resolution of this action, resided in Alabama, and CheckRedi collected a bad check fee in excess of the fee allowable by law; and the EFTA Class consists of all natural persons, who within one year prior to the filing of this action and extending through the resolution of this action, resided in Alabama, and CheckRedi allegedly initiated an electronic debit from their consumer bank account without prior authorization. Although the classes are separate, the parties agree this settlement agreement

effectively settles the claims of all members of both classes, therefore the classes and their claimants will hereinafter be referred to as collectively as the "Settlement Class".

The Settlement Agreement contemplates the establishment of a settlement fund totaling $44,814.00 to refund the total amount of bad check fees during the relevant time period to the Settlement Class.  This fund will be used to pay Settlement Class Members a cash settlement payment in exchange for the Settlement Class Members' release of FDCPA and EFTA claims alleged in the action against the Defendant.  In addition to the settlement fund, CheckRedi has agreed to pay the cost of notice and settlement administration, Plaintiff's attorney's fees, costs and expenses up to $110,000.00, and a class representative case contribution award of $6,000.00 to Plaintiff. These amounts are subject to Court approval.

## II.     PROPOSED SETTLEMENT

### A.     Payment and Release

All Settlement Class Members will receive a single, per capita payment by check as monetary settlement relief under the Settlement Agreement in exchange for the Settlement Class Members' release of all FDCPA and EFTA claims against the Defendant related to bad check fees or amounts debited by CheckRedi from their bank accounts.

### B.     Notice and Administration Provisions

4

On August 17, 2017, the Court entered an Order granting preliminary approval of the class action settlement (the "Preliminary Approval Order"). (Doc. 54). The Preliminary Approval Order authorized the Parties to retain a Settlement Administrator and to direct the Settlement Administrator to mail the Class Notice. The Preliminary Approval Order also noted that the Court would hold a Final Hearing at 2:00 P.M. on November 8, 2017, in Courtroom 7B at the Hugo L. Black United States Courthouse, 1729 5th Ave. N., Birmingham, Alabama 35203 to determine whether the settlement is fair, reasonable and adequate. This information is also contained in the Class Notice.

On or before September 13, 2017, the Settlement Administrator mailed the Class Notice to all class members. Prior to mailing the notice, using software approved by the U.S. Postal Service, the Settlement Administrator updated all class members' mailing addresses by processing the class list through its "Coding Accuracy Support System" and the National Change of Address update process. (Exhibit B, Hughes Aff. at ¶ 5).

## C. Class Members' Response to the Proposed Settlement

The response to the Settlement has been positive. As of the date of this filing, no objection or opt-out was received. To the extent there are any objections or opt-

outs, Class Counsel will address any such objection or opt-out in a supplement filing made prior to the October 24, 2017, supplemental supporting paper deadline.

## III.   THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED

A "district court must approve any settlement agreement in a class action." *Dikeman v. Progressive express, Ins. Co.*, 312 Fed.Appx. 168, 171 (11th Cir. 2008). Because the Parties provided class members with the best practicable notice, and the Settlement is fair, adequate, and reasonable, the Court should grant Plaintiff's Motion for Final Approval.

### A. The Parties Provided the Best Practicable Notice

Before a court can exercise jurisdiction over the claims of absent class members, certain minimal due process requirements must be satisfied. *In re Silicone Gel Breast Implant Products Liability Litigation,* 2010 WL 11506713, at *33 (N.D. Ala. 2010). Absent class members must receive notice and an opportunity to be heard and to participate in the litigation, whether in person or through counsel. Fed. R. Civ. P. 23(c)(2)(B). The notice must be the "best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-315 (1950)).

6

Here, the notice program was developed by First Class, Inc. ("First Class") in connection with its duties as the Claims Administrator appointed by the Parties. (Exhibit B, Hughes Decl. at ¶ 3). CheckRedi provided First Class with contact information for 2,340 Settlement Class Members. (*Id.* at ¶ 4). Prior to mailing, First Class followed its standard practice to verify the correctness of class members' mailing addresses and updated the addresses for class members when necessary. (*Id* at ¶ 5) On September 13, 2017, First Class mailed the Court-approved Class Notice via U.S. Mail, First Class Service Requested to the 2,340 Settlement Class Members. (*Id.* at ¶ 7). The best practicable notice has been made to all Settlement Class Members.

The Notice defined the Settlement Class and described the release of claims. (Doc. 53-1). The Notice also informed class members of terms of the Settlement, their right to be excluded from the Settlement or to object to the Settlement. *Id.* at pp. 3-4. The Notice, in bold, describes the claims released by the Class Members and the effect of a judgment entered by the court. The Notice gives a time, place and date for the Final Fairness Hearing. *Id.* The Notice also details the settlement distribution process for the Settlement Fund. *Id.* at pp. 2-3. Thus, the Notice satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

### B. The Settlement is Fair, Adequate and Reasonable

The law has long been settled in the Eleventh Circuit: "In determining whether to approve a proposed [class action] settlement, the cardinal rule is that the district court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *Leveroso v. SouthTrust Bank of AL., N.A.*, 18F.3d 1527, 1530 (11th Cir. 1994). "Determining the fairness of the settlement is left to the sound discretion of the trial court." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Court's exercise of discretion should be "informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Id.* To aid in this determination, the Eleventh Circuit has identified six factors that a district court should examine when assessing whether a proposed settlement is fair, adequate and reasonable:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.  In evaluating these considerations, "the Court should not reach any ultimate conclusions with respect to issues of fact or law involved in the case." *Knight v. Alabama*, 469 F.Supp.2d 1016, 1033 (N.D. Ala. 2006). Rather, the court "must rely upon the judgment of experienced counsel and, absent fraud,

'should be hesitant to substitute its own judgment for that of counsel.'" *Cotton,* 559 F.2d at 1330.

### 1.  The *Bennett* Factors Weigh in Favor of the Settlement

As applied to this case, the factors outlined in *Bennett* support a finding that the Settlement is fair, adequate, reasonable, and worthy of final approval.

### a.  *Bennett* Factor One: Likelihood of Success at Trial

Where a substantial question exists regarding the likelihood of success at trial, this factor weighs in favor of approving a proposed class action settlement. *Knight*, 469 F.Supp.2d at 1033. It is virtually impossible to predict a likely result at trial. *Waters v. Cook's Pest Control, Inc.,* 2012 WL 2923542, at *13 (N.D. Ala. 2012). Here, Plaintiff faced significant hurdles both on the merits and in obtaining contested class certification.

In its Answer to Plaintiff's Amended Complaint (Doc. 18), Checkredi challenged the legal sufficiency of every claim alleged in the Amended Complaint, raising forty-one (41) separate affirmative defenses. *Id.* Among other things, Defendant argued:

- Plaintiff was not entitled to relief because any violation(s) were the result of a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error;

9

- Plaintiff was not entitled to relief because any violation(s) were unintentional;

- Plaintiff was not entitled to relief because CheckRedi's good faith reliance on the information provided to it; and

- Plaintiff was not entitled to relief because of enforceable arbitration provisions and provisions waiving Plaintiff's right to participate in a class action.

Although Plaintiff vigorously opposed CheckRedi's contentions, the same issues could have been raised again in summary judgment motions at the individual and class stages.   Thus, the Settlement provides the class a sure result in the face of substantial legal uncertainty.

In addition, Plaintiff's ability to obtain contested class certification was far from certain. Checkredi contends it provided the appropriate notice to each of the class members prior to electronically debiting check collection fees.  Checkredi also contends that the class members authorized it to do so, and even if they did not, then the debits at issue are excluded from the EFTA's requirements.  Although Plaintiff was confident that the Court could certify a class, the settlement takes the uncertainty (and the manageability and superiority issues) off the table, clearing the way for an excellent class resolution.

### b. *Bennett* Factors Two and Three: Range of Recovery and the Point at Which Settlement is Fair

"The second and third considerations of the *Bennett* test are easily combined." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 541 (S.D. Fla. 1988). A district court must first determine the appropriate standard of damages (in order to calculate the range of recovery), and then determine where in this range of recovery a fair, adequate and reasonable settlement amount lies. *Id.* The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable. *See id.* at 542 (explaining that "a settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery").

Plaintiff's class-wide FDCPA and EFTA claim against CheckRedi would likely be capped at a statutory damages recovery for the Settlement Class as the lesser of $500,000 or one percent of CheckRedi's net worth. *See* 15 U.S.C. § 1692k(a). CheckRedi claims that one percent of its net worth would be zero, substantially less than the $44,814.00 it is contributing to the Settlement.

Further, CheckRedi contends that the actual damages, if any, are limited to $7.50 per bad check transaction, which is essentially the difference between the $37.50 bad check fee charged and the $30.00 cap allowable under Alabama statute. In any event, CheckRedi has agreed to pay an amount that should provide up to $19.15 for each bad check fee charged, which is greater than the amount it contends

the Settlement Class Members' actual damages would be capped. Further, Checkredi contends that after it became aware it collected a fee greater than allowed by law, it refunded $7.50 to the majority of class members.  The settlement relief provided by CheckRedi is an amount greater than the amount that the Settlement Class Members could expect to recover.  Thus, given the capped range of recovery on a class basis and the relief that is part of the Settlement Agreement, the Settlement is more than fair.

### c. *Bennett* Factor Four: Complexity, Expense, and Duration of the Litigation

As the Eleventh Circuit has noted: "In these days of increasing congestion within the Federal court system, settlements contribute greatly to the efficient utilization of our scarce judicial resources."  *Cotton*, 559 F.2d at 1331.

The issues in this case, both technical and legal, are highly complex.  Were this case to proceed to trial (or even appeal), the costs would increase dramatically for all Parties.  Both federal consumer protection statutes at issue in this case include a fee shifting provision, which includes reasonable attorneys' fees and costs for a successful action.  *See* 15 U.S.C. § 1692k(a)(3) and 15 U.S.C. § 1693m(a)(3).  The intrinsic value of the net settlement payment to Settlement Class Members is readily apparent when one considers the risks inherent in continued and protracted litigation, including that the Court could have denied Plaintiff's motion for class certification, or granted CheckRedi's motions for summary judgment.  Not to mention, had

Plaintiff won on liability, the statutory damages might have been zero because of CheckRedi's net worth or the actual damages capped at the amount of overcharge for bad check fees.  The costs and uncertainty of litigation, and the expense and delay that accompany the appeal process, support approval.

While the Parties could have litigated the case to judgment and taxed the resources of the litigants and the Court, they chose instead to rationally and reasonably forgo the expense and uncertainty of continued litigation and focus their efforts on achieving a fair and adequate settlement that accounted for the risks of further litigation.

### d. *Bennett* Factor Five: Substance and Amount of Opposition to the Settlement

The Settlement should also be approved because the Settlement Class Members have overwhelmingly accepted it.  "In determining whether a proposed settlement is fair, reasonable, and adequate, the reaction of the class is an important factor." *Camp v. City of Pelham*, 2014 WL 1764919, at *4 (N.D. Ala. 2014) (quoting *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (internal citation omitted)). Further, the lack of objections "points to the reasonableness of [the] proposed settlement and supports its approval." *Id.*

Here, as of the time of this filing, no Settlement Class Member has filed an objection or opted out of the settlement.  Should any Settlement Class Member file

an objection or opt-out, Class Counsel will respond to such objection or opt-out and update the court on the Settlement Class Members' reaction to the class settlement.

### e. *Bennett* Factor Six: The Stage of the Proceedings

A court evaluates the stage of the proceedings at the time of settlement to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation. *See Behrens*, 118 F.R.D. at 544.

Here, the initial complaint was filed on February 25, 2016. The parties conducted discovery. Plaintiff served Checkredi with his first and second sets of written discovery. Checkredi produced almost 400 pages of documents. Checkredi deposed the class representative. Plaintiff also served third parties with subpoenas, including Checkredi's certified public account. Checkredi unsuccessfully challenged Plaintiff's subpoena to its accountant. *See* Docs. 37 and 42. Checkredi's accountant produced confidential financial information, including information concerning Checkredi's net worth. Plaintiff deposed Checkredi's corporate representative. Two other CheckRedi entities filed motions for summary judgment on September 8, 2016. *See* Docs. 27 and 28.

Using the information obtained in discovery, the Parties participated in mediation with the Honorable Magistrate Judge Staci G. Cornelius. After the

mediation session, which concluded after 7:30 P.M., and the exchange and review of additional information, the Parties were "well aware of the other side's position and the merits thereof" when settlement negotiations commenced.   *See In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1332 (S.D. Fla. 2001).   At the time that the Parties reached a class-wide settlement, they were fully informed on the merits of the case and the associated risks to the Parties.

### 2.   The Judgment of Experienced Counsel and the Absence of Collusion Further Support the Settlement

In addition to the *Bennett* factors, a district court may also rely upon the judgment of experienced counsel for the parties.   *See Greco v. Ginn Dev. Co., LLC*, No. 14-11443, --- F. App'x ---, 2015 WL 7755673, at *3 (11th Cir. Dec. 2, 2015) (citing *Cotton*, 559 F.2d at 1330).   Absent evidence of fraud or collusion, a court should "be hesitant to substitute its own judgment for that of counsel."   *Greco*, 2015 WL 7755673 at *3.   Where the parties have negotiated at arms-length, the Court should find that the settlement is not the product of collusion. *See, e.g., Ass'n for Disabled Ams., Inc.*, 211 F.R.D. at 470.

Here, based on its experience, it is Class Counsel's informed position that the Settlement is fair, reasonable and adequate.   The Court has already concluded that Class Counsel has the experience to adequately represent the Settlement Class Members in this action (Doc. 54, ¶ 4).   Further, the parties negotiated in good faith

and at arms-length with a magistrate judge assigned by the Court.  (Doc. 51, at 8).

But for Magistrate Cornelius' efforts, the Parties would still be litigating this case.

## IV. CONCLUSION

This Settlement represents an excellent result for the Settlement Class
Members, which is more than fair, adequate and reasonable.    Accordingly,
Plaintiff's Motion for Final Approval should be granted and the Court should enter
the Parties' proposed Final Approval Order attached hereto as Exhibit A.

Dated: September 19, 2017.

Respectfully submitted,

*/s/ Micah S. Adkins*
Micah S. Adkins (ASB-8639-I48A)
THE ADKINS FIRM, P.C.
2 Perimeter Park South, Suite 405 E
Birmingham, Alabama 35243
Telephone:  205.206.6718
Facsimile:   205.208.9632
Email:  MicahAdkins@ItsYourCreditReport.com

David L. Selby, II (ASB-6994-Y62D)
BAILEY & GLASSER LLP
3000 Riverchase Galleria, Suite 905
Birmingham, Alabama 35244
Telephone:  205.988.9253
Facsimile:   205.733.4896
Email:        dselby@baileyglasser.com

Ronald C. Sykstus (ASB-7064-K73R)
BOND, BOTES, SYKSTUS, TANNER &
EZZELL, P.C.
225 Pratt Avenue
Huntsville, Alabama 35801
Telephone:  256.539.9899
Facsimile:  256.539.9895
Email:       rsykstus@bondnbotes.com

Penny Hays Cauley (ASB-6309-A63P)
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, South Carolina 29501
Telephone:  843.665.1717
Facsimile:  843.665.1718
Email:       phc917@hayscauley.com
*Counsel for Plaintiff*

CERTIFICATE OF SERVICE

I certify that on September 19, 2017, I filed the foregoing paper via CM/ECF, which will send electronic notification of same to the following counsel of record:

Neal Moore, III
Tina Lam
Maridi Huggins
Ferguson, Frost, Moore & Young, LLP
1400 Urban Center Drive, Suite 200
Birmingham, Alabama 35242

**/s/ Micah S. Adkins**
Micah S. Adkins